IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.                                                                                         21-CR-6016-EAW

DALLAS WILLIAMS-SMOTHERS,

Defendant.

_____

## PLEA AGREEMENT

The defendant, **DALLAS WILLIAMS-SMOTHERS**, and the United States Attorney

for the Western District of New York (hereinafter "the government") hereby enter into a plea

agreement with the terms and conditions as set out below.

### I.        THE PLEA AND POSSIBLE SENTENCE

1.        The defendant agrees to waive indictment and to plead guilty to a one-count

Information which charges a violation of Title 18, United States Code, Section 231(a)(3) (civil

disorder), for which the maximum possible sentence is a term of imprisonment of 5 years, a

fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 3

years. The defendant understands that the penalties set forth in this paragraph are the

maximum penalties that can be imposed by the Court at sentencing.

2.        The defendant understands that, if it is determined that the defendant has

violated any of the terms or conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to 2 years, without credit for

time previously served on supervised release. As a consequence, in the event the defendant is

sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.   ELEMENTS AND FACTUAL BASIS

3.     The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

First, that a civil disorder existed at the time alleged in the Information;

Second, that such civil disorder obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce in any way or degree;

Third, that the defendant committed an act or attempted to commit an act to obstruct, impede, or interfere with any law enforcement officer lawfully engaged in the lawful performance of his or her official duties incident to and during the commission of the civil disorder; and

Fourth, that such act or attempt to act was done willfully and knowingly.

"The term 'civil disorder' means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

"The term 'law enforcement officer' means any officer or employee of . . . any State [or] any political subdivision of a State . . . while engaged in the enforcement or prosecution of any of the criminal laws of . . . a State [or] any political subdivision of a State." 18 U.S.C. § 232(7).

"The term 'commerce' means commerce (A) between any state . . . and any place outside thereof . . ." 18 U.S.C. § 232(2)(A).

## FACTUAL BASIS

4.      The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a.      On or about September 5, 2020, in the City of Rochester, in the Western District of New York, the defendant, **DALLAS WILLIAMS-SMOTHERS**, committed, and attempted to commit, an act to obstruct, impede, and interfere with law enforcement officers lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder, and the civil disorder obstructed, delayed, and adversely affected commerce and the movement of any article or commodity in commerce, in violation of 18 U.S.C. § 231(a)(3).

b.      On or about September 2, 2020, it was publicly revealed that Daniel Prude died on March 30, 2020, one week after an encounter with Rochester Police Department (RPD) officers. In the wake of that public disclosure, there were nights of violent protests in the City of Rochester that resulted in property damage and physical injury to several RPD police officers. During the protests on September 4, 2020, a group of protesters damaged property and turned over tables at two restaurants in the City of Rochester, causing numerous patrons to leave. In connection with the protests on September 5, 2020, law enforcement shut down Exit 14 on Interstate 490 in the City of Rochester, which is the exit for Broad Street and Plymouth Avenue near RPD headquarters, for approximately eight hours and the State Street exit on the Inner Loop in the City of Rochester for approximately an hour.

c.      During the evening of September 5, 2020, a group of approximately 1,500 protesters gathered near RPD headquarters, which is located at 185 Exchange Boulevard in the City of Rochester. Once the group arrived, they gathered at the intersection of Broad Street and Exchange Boulevard (which is located a block north of RPD headquarters), where they blocked all lanes of traffic on Broad Street and all lanes of traffic on Exchange Boulevard between Broad Street and Main Street. RPD officers manned metal barricades on the south side of the intersection of Broad Street and Exchange Boulevard. The group extended from the intersection of Broad Street and Exchange Boulevard to the intersection of State Street and Main Street. At various times over the course of approximately two hours, some members of the group hurled rocks,

3

bottles, lit fireworks, and other objects at police officers standing on the southern side of the intersection of Broad Street and Exchange Boulevard. Some members of the group also shined flashlights and pointed lasers at the police officers. The group was repeatedly asked by an RPD sound truck to move onto the sidewalks and leave the area or be subject to arrest for Disorderly Conduct for impeding traffic. After RPD repeatedly directed the group to leave the area, several members of the group disregarded those messages, remained in the streets, and continued to block the intersections. The defendant admits and agrees that the actions of the group on September 5, 2020, constituted a civil disorder within the meaning of 18 U.S.C. § 232(1), and that such civil disorder obstructed, delayed, and adversely affected commerce within the meaning of 18 U.S.C. § 232(2).

d.       On September 5, 2020, at approximately 11:20 p.m., the defendant was present with the group of protesters at the intersection of State Street and Main Street. At that time, the defendant ignited a mortar-style, commercial grade firework and threw it at a line of uniformed RPD officers as they attempted to address and control the crowd at the intersection of State Street and Main Street. The firework detonated in the immediate vicinity of the uniformed RPD officers, causing a loud explosion and creating a risk of serious injury to the officers. The defendant fled the area on foot and was later apprehended and arrested by RPD personnel. At the time of his arrest, the defendant possessed two mortar-style, commercial grade fireworks – each of which was three inches long and one inch wide, shaped like a light bulb, and had a fuse protruding from the stem – inside a pouch attached to his belt.

e.       The fireworks thrown by the defendant at RPD officers and possessed by the defendant at the time of his arrest were commercial grade fireworks that were made in China, and they contained nitrate and perchlorate explosive mixtures, which are classified as explosives under federal law.

## III.    SENTENCING GUIDELINES

5.       The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

6.       Pursuant to Guidelines § 1B1.2(a), the government and the defendant agree that the defendant's sentencing range for imprisonment and a fine shall be determined as if

the defendant was convicted of a violation of 18 U.S.C. § 844(d) (receipt of explosive in interstate commerce with knowledge or intent it will be used to injure or intimidate any individual).

## BASE OFFENSE LEVEL

7.    The government and the defendant agree that Guidelines § 2K1.3(a)(5) applies to the offense of conviction and provides for a base offense level of 12.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

8.    The government and the defendant agree that the following specific offense characteristic does apply:

   a.    a six-level increase to offense level 18 pursuant to Guidelines § 2K1.3(b)(3)(B) (use or possession of explosive material in connection with another felony offense).

## U.S.S.G. CHAPTER 3 ADJUSTMENTS

9.    The government and the defendant agree that the following adjustment to the base offense level does apply:

   a.    the three-level increase of Guidelines § 3A1.2(a) (official victim).

## ADJUSTED OFFENSE LEVEL

10.    Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 21.

## ACCEPTANCE OF RESPONSIBILITY

11.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of 18.

## CRIMINAL HISTORY CATEGORY

12.     It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13.     It is the understanding of the government and the defendant that, with a total offense level of 18 and criminal history category of I, the defendant's sentencing range would be **a term of imprisonment of 27 to 33 months, a fine of $10,000 to $100,000, and a period of supervised release of 1 to 3 years**. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

14.     The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or

recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

15.    The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV.    STATUTE OF LIMITATIONS

16.    In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.    REMOVAL

17.    The defendant represents that he is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI.   GOVERNMENT RIGHTS AND OBLIGATIONS

18.   The defendant understands that the government has reserved the right to:

a.   provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.   respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.   advocate for a specific sentence consistent with the terms of this agreement, including the amount of a fine and the method of payment; and

d.   modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

19.   At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 20-MJ-4167.

20.   The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII.   APPEAL RIGHTS

21.     The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13 above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

22.     The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

23.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13 above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII.  FORFEITURE PROVISION

24.    The defendant acknowledges that the defendant is the owner and/or exercised dominion and control of the explosives described below and agrees that such explosives constitute a nuisance as provided for in New York Penal Law § 400.05. The property is described as follows:

    a.      two (2) mortar-style, commercial grade fireworks seized from the defendant's person on September 5, 2020.

25.    The defendant agrees that the above-described property is subject to forfeiture and waives any and all statutory and constitutional rights, including but not limited to time restrictions and notice provisions with respect to the final disposition or forfeiture of the above property. The defendant further agrees to the destruction of the above referenced property.

26.    The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment and disposition of the firearm and ammunition survives and shall be given full force and effect.

## IX.  TOTAL AGREEMENT AND AFFIRMATIONS

27.    This plea agreement represents the total agreement between the defendant, **DALLAS WILLIAMS-SMOTHERS**, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

BY:   _____
BRETT A. HARVEY
Assistant United States Attorney

Dated: February __1__, 2021
        March

I have read this agreement, which consists of pages 1 through 11. I have had a full opportunity to discuss this agreement with my attorney, James L. Nobles, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.


_____         _____
DALLAS WILLIAMS-SMOTHERS                  JAMES L. NOBLES, ESQ.
Defendant                                 Attorney for the Defendant

Dated: February __1__, 2021               Dated: February ____, 2021
        March                                      march   1

11